**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROYAL WILLIAMS, individually and on behalf of all others similarly situated | Civil Docket No.: 1:21-cv-799 |
| Plaintiff, -against- | **CLASS ACTION COMPLAINT** |
| WEBULL FINANCIAL LLC, | **JURY TRIAL DEMANDED** |
| Defendants | |

Plaintiff, individually and on behalf of all other similarly situated persons, by his undersigned attorneys, brings this Class Action Complaint against Defendant, Webull Financial LLC, ("Webull" or "Defendant"), alleging the following based upon personal knowledge, and, as to all other matters, alleges, upon information and belief and investigation of her counsel, as follows:

## INTRODUCTION

1.     Webull is an online brokerage firm.

2.     On January 28, 2021, Webull purposefully, willfully, and knowingly removed the ability to purchase certain stocks issued by several companies from its trading platform, but let its users sell that stock.  These stocks include:

    a. GameStop Corp. ("**GameStop**" or "**GME**"), which trades under the ticker symbol GME;

    b. AMC Entertainment Holdings Inc. ("**AMC Entertainment**" or "**AMC**"), which trades under the ticker symbol AMC;

    c. Koss Corporation ("**Koss**"), which trades under the ticker symbol KOSS;

    d. Nokia Oyj ("**Nokia**" or "**NOK**"), which trades under the ticker symbol NOK;

    e. Naked Brand Group Ltd ("**Naked Brand**" or "**NAKD**"), which trades under the ticker symbol NAKD;

    f. Sundial Growers Inc ("**Sundial Growers**" or "**SNDL**"), which trades under the ticker symbol SNDL; and

g.   Castor Maritime Inc ("**Castor Maritime**" or "**CTRM**"), which trades under the ticker symbol CTRM.

3.    Webull's actions occurred in the midst of a rise in those companies' stock share prices and thereby deprived its customers, retail investors, of the ability to invest in the open-market and manipulate the open-market for the effected stock.

## PARTIES

4.    Plaintiff Royal Williams is, and at all relevant times was, a citizen of Florida.

5.    Defendant Webull Financial LLC ("**Webull**") is a Delaware entity with its principal place of business at 44 Wall Street, Suite 503, New York, NY 10005.  Defendant Webull Financial LLC is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC").

## JURISDICTION AND VENUE

6.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The aggregate claims of all proposed class and sub-class members are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members. Many members of the proposed class are citizens of a state different from Defendant.

7.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Webull distributed, marketed, advertised, and sold the trading services which are the subject of the present complaint. Finally, venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.

8.    This Court has personal jurisdiction over Webull.  Webull is authorized to and does conduct business in New York and has its headquarters located in the state.  Webull has specifically

marketed, advertised, and made substantial sales in New York, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## FACTS

9.    Webull is an online brokerage firm. Webull, was founded by  Wang Anquan, and is a subsidiary of the multinational Chinese company Fumi Technology.

10.    Webull's customers place securities trades through the firm's website or web-based application (or "**App**").  Webull permits customers to trade stocks, options, exchange-traded funds, and cryptocurrencies.

11.    Webull incorporated in May 2017, launched in 2018, and in three years, as of August 2020, has gained a following of more than 11 million users.  Accroding to reviews, its user interface is more complicated than other similar companies such as Robinhood, but simpler and more user-friendly than E*TRADE.  The company markets itself to individual investors and has seen increases in trading volume duing the coronavirus pandemic.

12.    Webull's website states: "Individuals are an important part of the market and should not be ignored…Respecting the investor is inspecting the market."  Ironically, Webull has done the contrary – ignored individuals and disrespected investors – by blocking access for millions of its customers to trade particular securities.

13.    In early to mid-January, stocks in GameStop, GME, began to rise.  During this time, Webull's customers were able to trade GameStop stock on the open market, including buying and selling the stock.

14.     Between January 25, 2021 and January 27, 2021, stocks in AMC Entertainment, which trades under the ticker symbol AMC, experienced a rise in trading value, going from approximately $4.72 per share up to $20.32 per share. During that time, Webull's customers were able to trade AMC Entertainment stock on the open market, including buying and selling the stock.

15.     Between January 26, 2021 and the morning of January 28, 2021, stock in Koss Corporation, which trades under the ticker symbol KOSS, went from trading at a price of approximately $11.67 per share up to a peak of $110 per share.  During that time, Webull's customers were able to trade Koss stock on the open market, including buying and selling the stock.

16.     Between January 24, 2021 and the morning of January 28, 2021, stock in Nokia, which trades under the ticker symbol NOK, went from trading at a price of approximately $4.16 per share up to a peak of $7.33 per share.  During that time, Webull's customers were able to trade Nokia stock on the open market, including buying and selling the stock.

17.     Between January 25, 2021 and the morning of January 28, 2021, stock in Naked Brand, which trades under the ticker symbol NAKD, went from trading at a price of approximately $0.40 per share up to a peak of $2.66 per share.  During that time, Webull's customers were able to trade Naked Brand stock on the open market, including buying and selling the stock.

18.     Between January 25, 2021 and the morning of January 28, 2021, stock in Sundial Growers, which trades under the ticker symbol SNDL, went from trading at a price of approximately $0.50 per share up to a peak of $1.05 per share.  During that time, Webull's customers were able to trade Sundial Growers stock on the open market, including buying and selling the stock.

19.     Between January 25, 2021 and the morning of January 28, 2021, stock in Castor Maritime, which trades under the ticker symbol CTRM, went from trading at a price of approximately $0.35 per share up to a peak of $0.80 per share.  During that time, Webull's customers were able to trade Castor Maritime stock on the open market, including buying and selling the stock.

20.     On or about January 28, 2021, Webull, in order to allegedly slow the growth of certain stocks, including GameStop, AMC Entertainment, Nokia, Naked Brand, Sundial Growers, Castor Maritime and Koss (collectively the "**Blocked Stocks**"), deprived its customers of the ability to purchase the Blocked Stocks.  Webull abruptly, purposefully, willfully, and knowingly pulled the ability to buy the Blocked Stocks from their platforms. This meant that investors were unable to buy the Blocked Stocks on Webull.

21.     Because of the increase in the Blocked Stocks stock prices, and the publicity received on or around January 27, 2021, many investors were looking to purchase one or all of the Blocked Stocks.

22.     Webull's actions were done purposefully and knowingly to manipulate the trading volume and/or price of the Blocked Stocks for the benefit of people and financial intuitions other than Webull customers.

23.     Since Webull blocked the stock from their platforms, the Blocked Stocks' prices went up, depriving investors of potential gains.

24.     Additionally, later on January 28, 2021, after Webull tooks its actions regarding the the Blocked Stocks, those stock prices decreased, as such Webull deprived investors of "shorting" the Blocked Stocks in the hopes the price drops.

25.    As a result of their actions, Webull blocked its investors from purchasing the Blocked Stocks, thereby depriving retailer investors from the benefits of Webull's services.

26.    The Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Webull, requires, pursuant to Rule 5310.01 regarding "Best Execution and Interpositioning," that Webull "must make every effort to execute a marketable customer order that it receives promptly and fully."  Webull made no effort to execute customer orders as it outright blocked all puchases of the Blocked Stocks' securities.  Therefore, Webull breached this obligation, along with others, and has caused its customers substantial losses due to its own negligence and failure to maintain adequate infrastructure or funds.

27.    Prior to January 28, 2021, Plaintiff signed up for an account with Webull.

28.    As of the start of trading on January 28, 2021, Plaintiff owned AMC Entertainment, Nokia, Naked Brand, Sundial Growers, and Castor Maritime.  He also intended that day to purchase shares in GameStop and Koss because he had been watching these stocks and anticipated both stocks were going to significantly increase in value that day.

29.    However, on the morning on January 28, 2021, Plaintiff used the Webull app platform, searched for the Blocked Stocks on Webull's platform, and found they were unavailable and that he could not purchase the GameStop and Koss stock, although the Blocked Stocks are publicly traded companies available on other platforms.

30.    Plaintiff was also not able to sell any of the Blocked Stocks immediately as he could not get any order to go through on Webull; he could only wait and watch the stock prices fluctuate.

31.    In response to Webull's prohibitions which were causing the Blocked Stock prices to fall, in order to mitigate his losses, Plaintiff sold shares in AMC Entertainment, Nokia, Naked

Brand, Sundial Growers, and Castor Maritime for far less than he could have earlier in the day. His loss resuted from Webull's prohibitions.

32.     Absent restrictions on the Blocked Stocks, stock prices would likely not have dropped as they had and Plaintiff would have been able to hold them and sell later for a profit.

33.     Thus, Plaintiff, like so many others, lost out on all earning opportunities for the Blocked Stocks.

**I.     <u>Class Action Allegations</u>**

34.     Plaintiff brings this lawsuit as a class action on his own behalf and on behalf of all other persons similarly situated as members of the proposed Class, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or c(4).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

35.     Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class: All Webull customers within the United States.

36.     Additionally, or in the alternative, Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Subclass: All Webull customers within the United States who were not able to buy any of the Blocked Stocks during the period of time that Webull removed the stock from its platforms.

37.     Additionally, or in the alternative, Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Subclass: All Webull customers within the United States who owned any of the Blocked Stocks before Webull removed the stock from its platforms,

but then sold any of the Blocked Stocks at a loss after Webull removed the stock from its platforms.[1]

38.    This action has been brought and may properly be maintained as a class action against Webull pursuant to the provisions of Federal Rule of Civil Procedure 23.

### A. Numerosity

39.    The exact size of the Class is unknown and not available to Plaintiff at this time, but Plaintiff understands based publicly available reports that Webull had approximately 11 million or more users in January 2021, thus it is clear individual joinder is impracticable.  Members of the Class can be easily identified through Defendants' records.

40.    Subclass members are likely in at least the thousands or tens of thousands.

### B. Commonality

41.    Numerous questions of law or fact are common to the claims of Plaintiff and members of the proposed Class and Sublcass. These common questions of law and fact exist as to all Class and Subclass members and predominate over questions affecting only individual Class and Subclass members. These common legal and factual questions include, but are not limited to the following:

    a.  Did Webull knowingly fail to provide the financial services that were needed to handle reasonable consumer demand, including trading securities that are available on every other competitive trading platform;

    b.  Did Webull fail to provide the duty of care to its customers when it purposefully removed the Blocked Stocks;

    c.  Did Webull remove the Blocked Stocks in order to harm their customers' positions in the Blocked Stocks and increase its own potential financial gains;

---

[1] Excluded from the Class and Subclass are Webull entities and their current employees, counsel for either party, as well as the Court and its personnel presiding over this action.

d.  Did Webull violate FINRA Rule 5310, among other FINRA rules, state rules, and federal regulations;

e.  Did Webull violate consumer protection laws in failing to disclose that its services would not include the ability to trade on the Blocked Stocks, and other securities, for substantial periods of time;

f.  Did Webull breach its legal, regulatory, and licensing requirements by failing to provide adequate access to financial services;

g.  Did Webull breach its contracts or the implied covenant of good faith and fair dealing in connection with its failure to provide financial services;

h.  Was Webull negligent or grossly negligent by failing to provide financial services in a timely manner due to its own possible nefarious desires or negligence;

i.  Did Webull breach its fiduciary duties to customers by failing to provide adequate access to financial services;

j.  Was Webull unjustly enriched by its conduct;

k.  Were Plaintiff and the other Class and Subclass members injured by Webull's conduct, and if so, what are the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief.

l.  Is Plaintiff, and are the other Class and Subclass members, entitled to injunctive and declaratory relief.

### C.  Typicality

42.    The claims of the named Plaintiff are typical of the claims of the proposed Class. The named Plaintiff was a customer during the class period and was unable to trade the Blocked Stocks and place time-sensitive trades on the Blocked Stocks.  Plaintiff sustained damages as a result of Webull's wrongful conduct.

### D.  Adequate Representation

43.    Plaintiff will fairly and adequately represent the interests of the Class in that he has no conflicts with any other Class members. Plaintiff has retained competent counsel experienced in prosecuting complex class actions and they will vigorously litigate this class action.

44.     Plaintiff has no interest antagonistic to those of the Class or Sub-class, and Defendant has no defenses unique to Plaintiff.

**E. Predominance and Superiority**

45.     There is no plain, speedy, or adequate remedy other than by maintenance of this class action. A class action is superior to other available means, if any, for the fair and efficient adjudication of this controversy. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant.  Additionally, given the relatively modest damages sustained by most individual Class members, few, if any, proposed Class members could or would sustain the economic burden of pursuing individual remedies for Webull's wrongful conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court.  This class action presents no material difficulties in management.

46.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which may produce incompatible standards of conduct for Defendants.

47.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B) because the prosecution of separate actions by individual members of the proposed Class would create a risk of adjudications with respect to individual Class members which may, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

10

48.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Webull has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the Class as a whole.

49.     Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because questions of law or fact common to the Class members predominate over any questions affecting only individual members, and a Class action is superior to other available remedies for the fair and efficient adjudication of this controversy. The amount of damages available to the individual Plaintiff is insufficient to make litigation addressing Webull's conduct economically feasible for most in the absence of the class action procedure.  Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

50.     Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because questions of law or fact common to the Class members may be certified and decided by this Court on a class wide basis.

<u>**CAUSE OF ACTION I**</u>
<u>**For Breach of Contract**</u>

51.     Plaintiff hereby incorporate by reference the factual allegations set forth above.

52.     In order to use the Webull trading platform, a potential customer must enter into the Terms of Webull Service with Webull ("Terms of Service").

53.     Plaintiff and all class members did enter into a Terms of Service.

54.     Webull breached its Terms of Service by, among other things, failing to disclose that its platform was going to randomly pull a profitable stock from its platform; that Webull failed to provide adequate explanation to their customers; that Webull knowingly put their customers at a disadvantage compared to customers who used other trading apps; that Webull failed to provide access to its own financial incentives to pull certain securities including the Blocked Stocks; that Webull's prohibited plaintiffs from performing in a timely manner (or at all) under the contract; that Webull failed to comply with all applicable legal, regulatory, and licensing requirements; and that Webull failed to exercise trades and actions requested by customers.

55.     As such, Webull breached its Terms of Service with Plaintiff and Class members.

56.     Webull's failure to perform and its breaches of the Terms of Service resulted in damages and losses to Plaintiff and Class members and continues to expose them to harm because Webull continues to fail to perform under the Terms of Service. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

## CAUSE OF ACTION II
### Breach of the Implied Covenant of Good Faith and Fair Dealing

57.     Plaintiff hereby incorporate by reference the factual allegations set forth above.

58.     Plaintiff and members of the Class and Subclass entered into the Terms of Service with Defendant Webull to open a Webull trading account. They agreed to Webull's Terms and Conditions by using Webull's website and trading platform.

59.     Plaintiff and members of the Class and Subclass fulfilled their obligations under these contracts by adhering to their terms and using Webull's trading services through its website and trading platform.

60.     Webull was obligated to provide the trading services required under those contracts at all times, including but not limited to, trades for the Blocked Stocks.

61.     When initially signing up for Webull, Plaintiff and all those similarly situated could and most actually did trade the Blocked Stocks.

62.     Webull unfairly interfered with the rights of Plaintiff and members of the Class and Subclass to receive the benefits of the Terms of Service by, among other things, (i) failing to provide services necessary to carry out a trade; (ii) failing to provide certain trading services whatsoever; (iii) failing to inform individuals in a timely member of the drastic changes in trading abilities; and (iv) prohibiting plaintiffs from buying the Blocked Stocks for Webull's own pecuniary interest and not disclosing those interest to Plaintiff and all Class and Subclass members.

63.     Webull's conduct has caused Plaintiff and members of the Class and Subclass harm, losses, and damages. These losses reflect damages to Plaintiff and members of the Class and Subclass in an amount to be determined at trial or separate proceedings as necessary.

## CAUSE OF ACTION III
### Negligence

64.     Plaintiff hereby incorporate by reference the factual allegations set forth above. Webull had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

65.     Webull had a duty to exercise reasonable care in providing trades on the free, open market for its customers.

66.     Webull unlawfully breached its duties by, among other things, (i) removed the Blocked Stocks without notice from its trading app; (ii) failed to provide financial services related

to the Blocked Stocks; (iii) failing to notify customers in a timely manner of the the Blocked Stocks "blackout."

67.     Webull's conduct as set forth in this Complaint was want of even scant care, and its acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct. Their actions breach any duty of care to their customers, but are also inconsistent with the standard of care expected from similar firms in the open market.

68.     Upon information and belief, no institutions similar to Webull have ever outright banned customers from purchasing a specific share of a specific security before the Blocked Stocks were banned.

69.     Webull essentially abandoned its customers altogether by pulling the Blocked Stocks, a standard of care so far below what is required for a business engaging in time sensitive trading services that it amounts to a complete abandonment of its duties.

70.     Webull's grossly negligent and wrongful breaches of its duties owed to Plaintiff and members of the Class and Subclass proximately caused losses and damages that would not have occurred but for Webull's gross breach of its duty of due care. These losses reflect damages to Plaintiff and members of the Class and Subclass in an amount to be determined at trial or separate proceedings as necessary.

<u>**CAUSE OF ACTION IV**</u>
<u>**Breach of Fiduciary Duty**</u>

71.     Plaintiff hereby incorporates by reference the factual allegations contained herein.

72.     As a licensed provider of financial services, Webull at all times relevant herein was a fiduciary to Plaintiff and Class members and owed them the highest good faith and integrity in

performing its financial services on their behalf.  Webull also acted as a fiduciary to each and every customer who agreed to the Terms of Service .

73.     Webull breached its fiduciary duties to Plaintiff and Class members by, among other things, failing to disclose that its platform was going to remove the Blocked Stocks purchases in a timely manner; actually removing the Blocked Stocks; removing the Blocked Stocks for its own pecuniary benefits; that Webull failed to provide access to its financial services in a timely manner; that Webull failed to comply with all applicable legal, regulatory, and licensing requirements; and that Webull failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

74.     Webull's conduct has caused Plaintiff and Class members' harm, losses, and damages and continues to expose them to harm because Webull continues to breach its fiduciary duties. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

### **Requested Relief**

WHEREFORE, Plaintiff prays that this Court:

1.  Enter an award to Plaintff and the other members of the class and/or subclasses in an amount to be determined;

2.  Enter an award to Plaintff and the other members of the class and/or subclasses for punitive damages for the willful, wanton, and reckless behavior of Defendant;

3.  Certify the class and/or subclasses and designate Plaintiff as class representative and the undersigned as class counsel;

4.  Enter an award for attorneys fees and costs; and

5.  Grant such other and further relief as the Court may deem just and proper.


Dated:  January 28, 2020

SIRI & GLIMSTAD LLP

_____

Aaron Siri
Mason Barney
Elizabeth A. Brehm
200 Park Avenue, 17th Floor
New York, New York 10166
Tel: (212) 532-1091
aaron@sirillp.com
mbarney@sirillp.com
ebrehm@sirillp.com
*Counsel for Plaintiff*
*and the Putative Class*